BULLIS v. FARMERS' STATE BANK OF DECKERVILLE.

1. ACCOUNTING—BILL—PARTIES.
   Where a mortgagor, after the discharge of the mortgage, files a bill against the mortgagee for an accounting, based on an agreement binding the mortgagee to apply the proceeds of the mortgage for specified purposes, the wife of the mortgagor, who joined in the mortgage, and his mother, who released her life estate in a part of the premises, are not necessary parties.

2. MORTGAGES—DISPOSITION OF PROCEEDS—ACCOUNTING BY MORTGAGEE.
   On the execution of a mortgage, the mortgagee agreed to apply the proceeds thereof in the payment of a debt due from a third person to a bank, secured by a chattel mortgage. It was provided that, on the proceeds being so applied, the mortgaged chattels should be returned to the third person. The mortgagee did not apply the proceeds as agreed, and the bank sold the mortgaged chattels to apply on its indebtedness. *Held*, that the mortgagee must account to the mortgagor for the full amount of the proceeds of the mortgage, with interest.

Appeal from Sanilac; Beach, J.   Submitted December 8, 1905.   (Docket No. 166.)   Decided April 30, 1906.

Bill by Edward Bullis against the Farmers' State Bank of Deckerville and Edward M. Mark for an accounting. From a decree for complainant, defendants appeal. Affirmed.

*C. F. Gates* and *J. S. Crandell*, for complainant.

*Stevens, Graham & Stevens* and *W. H. Burgess* (*William T. Mitchell*, of counsel), for defendants.

McALVAY, J.   From a decree of the circuit court in Sanilac county, in chancery, against defendants on a bill filed for an accounting, an appeal has been taken to this court.

Complainant and wife, on October 14, 1902, gave defendant bank a mortgage on their farm for $1,000, under the following circumstances: Judson Bullis, complainant's brother, had become financially involved. He had borrowed money from defendant bank, and other banks, to a considerable amount, and given chattel mortgages therefor upon his team, threshing apparatus, farming implements, and farm stock, and, it is claimed, fraudulently upon property he did not own or which was not in existence. A partner of Judson Bullis named Jenereau was a party to some of these transactions. The entire indebtedness of Judson Bullis was from $2,000 to $4,000. On the night this mortgage was given, about midnight, Judson Bullis and defendant Mark, who is cashier of defendant bank, went out into the country to complainant's farm, for the purpose of making some arrangement about Judson's affairs. Arriving at a certain store, by arrangement Judson went first to complainant's house, arriving there about ten minutes before Mark, called his brother up, told him he was in difficulty and in danger of going to prison and wanted his help. He stated that Mark would be there soon. No arrangement was made before Mark arrived, except complainant said he would help him. When Mark came there were present during the interview five persons—complainant and wife, his brother Judson, and defendant Mark and Dr. Mark. An agreement was finally entered into that complainant and wife should give a mortgage on their farm of $1,000. Defendant Mark, who had the blanks in his pocket, drew up the mortgage and note running to defendant bank, both of which were duly executed, and the mortgage acknowledged, and all delivered to Mark, taken away by him, and afterwards recorded.

Complainant contends that this mortgage was given under the express agreement that its proceeds were to be applied to pay the chattel mortgages of the Truman Moss State Bank, upon which Judson's personal property had been seized; that such property was at once to be returned

to Judson; that the amount of indebtedness to said bank was about $750; that the balance was to be paid back to complainant, or to be credited upon the mortgage. This, complainant says, was done to help his brother get back his stock, team, and tools, so that he could support his family, and complainant was to have this property as security for what he paid, and it was also to prevent any criminal prosecution against Judson. The proceeds of this mortgage were not applied, as complainant contends, according to agreement.

Defendants insist that no agreement as above set forth was entered into, but that the proceeds of said mortgage and other moneys received by defendant bank were to be applied, first, to pay defendant bank in full for all indebtedness of Judson Bullis to it, and the balance to be paid out to other mortgagees, being creditors of said Bullis, as complainant well understood.

The next night, late, defendant Mark and Dr. Mark, his brother, went to Elizabeth Travis, the mother-in-law of Judson Bullis, and secured from her and her husband a mortgage and note for $500 in favor of defendant bank. Defendant Mark, having ascertained that Emmeline Bullis, the mother of complainant, had a life lease or estate in part of his farm upon which he had given this mortgage for $1,000, claiming the mortgage could not be realized upon unless she released her interest, induced complainant to go with him to Saginaw and secure such release. They went October 17th, meeting one of defendant's attorneys at Port Huron, arriving at Saginaw in the night, and after some delay found where she resided. They arrived at her home between 11 and 12 o'clock and secured from her a writing, probably a mortgage, for the purpose, as she testified, of paying the Truman Moss State Bank indebtedness and releasing Judson's stock, and preventing him from being prosecuted criminally, and any amount remaining to be paid to her. She was over 70 years old, had been aroused from her sleep, and says she was somewhat confused. This instrument was not in evidence,

and, as far as the record shows, was never negotiated by the defendant bank.

On October 28th defendant bank, through cashier Mark, negotiated the mortgages given to it by complainant and Mrs. Travis to one Eli Burtch, a money loaner, and also a creditor of Judson Bullis, for the sum of $1,500, the Travis mortgage for $500, in notes and mortgages made or indorsed by Judson Bullis, and the mortgage given by complainant, for $1,000 cash. This Burtch had a mortgage of $400 on complainant's farm and took up another small mortgage against it. He made an arrangement with complainant that he would fund all this indebtedness, amounting to $1,650, take a deed from complainant and wife, and give back a contract providing for payment in 10 years. On October 29th defendant bank discharged the mortgage given to it by complainant. From the testimony of defendant Mark and the books of defendant bank it appears that all of the indebtedness then owing to it by Judson Bullis was paid October 16, 1902.

It is insisted by defendants that complainant's wife and mother should have been joined as parties to this suit. This is not indicated under the pleadings unless claimed by the general demurrer clauses in the answers. There is no merit in the claim. The mortgage is discharged, and no attack is made upon it by the bill of complaint. No rights or interests of the wife or mother are in litigation here. The sole question in dispute is whether defendants received the money from this mortgage for certain specific purposes, and to be applied upon a specific indebtedness of Judson Bullis.

The question in the case is purely a question of fact. To discuss the evidence in this voluminous record relative to the numerous mortgages, and the indebtedness of Judson Bullis both individually and in connection with Jenereau, his partner, would be unprofitable. Admittedly complainant had no part in these transactions, and no knowledge except as given by his brother and defendants or their agents. We find, from a careful examination of

the whole record, the facts to be that the agreement was made with Mark, the cashier of defendant bank, as claimed by complainant, that the mortgage was given to defendants for the purpose of paying the indebtedness of the Truman Moss State Bank, and to secure the return of the personal property of Judson Bullis, and, without doubt, also to avoid his prosecution; that defendants did not apply any part of the $1,000 received as agreed; that Truman Moss State Bank was not paid, but kept the property it had seized and sold it to apply on its indebtedness; that defendants must account to complainant for full amount thereof, with interest to date.

The decree of the circuit court is affirmed, with costs.

GRANT, BLAIR, HOOKER, and MOORE, JJ., concurred.